IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                              Cr. No. 25-cr-20285-SHL

LATERRIAN FRANKLIN,

     Defendant.

---

**MOTION TO DISMISS THE INDICTMENT
OR IN THE ALTERNATIVE TO STAY THE PROCEEDING**

---

COMES NOW, Defendant Laterrian Franklin, by and through undersigned counsel, pursuant to Fed. R. Crim. P. 12(b)(2), and for his Motion to Dismiss, or in the alternative to stay the proceeding, states as follows:

## I.    <u>INTRODUCTION</u>

Mr. Franklin is charged in Count 1 of the indictment with being an unlawful user of a controlled substance in knowing possession of a firearm in violation of 18 U.S.C. § 922(g)(3). (<u>See</u> Indictment (Penalty Copy), ECF No. 12, PageID 23.)  He moves this Court to dismiss Count 1 of the indictment.

In 2022, the Supreme Court issued its opinion in <u>New York State Rifle & Pistol Association, Inc. v. Bruen</u>, 597 U.S. 1 (2022). That decision upended Second Amendment doctrine, replacing the lower courts' prior interest-balancing approach with an analysis grounded only in constitutional "text and history."  <u>Id.</u> at 22.  Criminalizing gun possession pursuant to 18

U.S.C. § 922(g)(3) is unconstitutional under Bruen's "text and history" standard.  Id. at 39.  Bruen instructs that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government may rebut the presumption of unconstitutionality only by showing that "the regulation is consistent with this Nation's historical tradition of firearm regulation."  Id. at 17.

The Sixth Circuit recently ruled that 18 U.S.C. § 922(g)(3) is constitutional as applied to dangerous individuals.  See United States v. Van Ochten, 150 F.4th 552, 556 (6th Cir. 2025).  Mr. Franklin is not dangerous and so 18 U.S.C. § 922(g)(3) is unconstitutional as applied to him.

## II.    ARGUMENTS AND AUTHORITIES

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  The Second Amendment "protects an individual right to possess firearms," District of Columbia v. Heller, 554 U.S. 570, 576 (2008), a right the Court has described as basic to one's "inherent right of self-defense" and "fundamental to our scheme of ordered liberty." McDonald v. City of Chicago, 561 U.S. 742, 767 (2010).

In evaluating the constitutionality of firearm regulations under the amendment, the Court applies a two-step "test rooted in the Second Amendment's text, as informed by history."  Bruen, 597 U.S. at 19.  At step one, the Court asks whether "the Second Amendment's plain text covers an individual's conduct."  Id.  If it does, "the Constitution presumptively protects that conduct," at which point the burden falls on the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation"—that is, the tradition in existence "when the Bill of Rights was adopted in 1791."  Id. at 24, 37.  If the government fails to carry this burden, the challenged regulation is unconstitutional.  Id. at 38-39.

2

**A.      The Second Amendment's plain text covers Mr. Franklin's act of possessing a firearm and § 922(g)(3) infringes on his right to bear arms.**

Mr. Franklin is a member of the people protected by the Second Amendment despite his marijuana use. See Vanochten, 150 F.4th at 557. Consequently, § 922(g)(3) infringes on his right to keep and bear arms. Id.

**B.      The government cannot show a historical tradition analogous to disarming all marijuana users.**

In Vanochten, the Sixth Circuit rejected the idea that the historical principle of disarming dangerous people justifies disarming all unlawful substance users as a class. See 150 F.4th at 557-58. Instead, as first explained in United States v. Williams, 113 F.4th 637 (6th Cir. 2024), "when Congress disarms 'groups of people' it 'believes to be dangerous,' (here, illegal drug users) it remains the case that 'each member of that disarmed group' must have the 'opportunity to make an individualized showing that he himself is not actually dangerous.'" Vanochten, 150 F.4th at 558 (quoting Williams, 113 F.4th at 663).

Vanochten held that "[t]he government can disarm an illegal drug user who presently poses a clear risk to others if armed." Id. at 560. Review of a person's criminal record helps make the determination of whether a person poses a clear risk of future harm. Id. Courts are to frame the inquiry with questions like: "Does the person have a history of violent conduct—murder, assault, robbery, for example? Likewise, does he have a history of committing crimes that inherently pose a significant threat of danger to others—drug trafficking or burglary, for example? Id. (quoting Williams 113 F.4th at 658-59). The court recognized that determining whether a drug user is dangerous will be easy in some cases and hard in others. Id. But the Vanochten court trusted that the lower courts "'like the officials of old' will focus on 'each individual's specific characteristics' and make good faith judgments accordingly." Id. (quoting Williams 113 F.4th at 657).

3

Vanochten was an easy case because on the day of the defendant's arrest for the underlying conduct in the state, he was shooting a rifle in the direction of a propane tank in a residential neighborhood while drunk and high. Id. This established that he misused his gun in a way that could have caused a major explosion, injuring himself or harming the person or property of another. Id. at 560-61. Thus, "[h]is misconduct posed 'a significant threat of danger' to himself and others." Id. at 561 (quoting Williams, 113 F.4th at 659) The Vanochten court concluded that from this incident alone, the defendant was dangerous because he had demonstrated that he posed a clear risk of future harm to others if armed—he fired a rifle in a residential neighborhood in the direction of a propane tank while drunk and high. Id. at 562.

In contrast to the Vanochten defendant, Mr. Franklin was not misusing the firearm in a way that posed a significant danger to himself or others when he was arrested. He was not presenting a clear threat to the public. Moreover, he has no prior criminal history, violent or otherwise. Hence, Mr. Franklin cannot be deemed a dangerous person. Therefore, 18 U.S.C. § 922(g)(3) cannot be constitutionally applied to him.

**B.      The Supreme Court has accepted certiorari on this issue.**

Mr. Franklin notes that the Supreme Court has accepted certiorari to address the question of whether 18 U.S.C. § 922(g)(3) is subject to as-applied constitutional challenges post-Bruen. See United States v. Hemani, No. 24-1234, 2025 WL 2949569, at *1 (October 20, 2025). This is because the courts of appeals are hopelessly divided over the constitutionality of § 922(g)(3) as applied to non-violent adults who use marijuana, as well as over whether Congress may categorically disarm entire classes of people based on presumptions of dangerousness. Should this Court reject Mr. Franklin's as-applied challenge under Vanochten, Mr. Franklin addresses the various circuits approaches and adopts those favorable to him as stated below.

The Fifth Circuit has held that § 922(g)(3) is unconstitutional as applied to a person based on her "habitual or occasional drug use" when there is no evidence that the person "was presently or even recently engaged in unlawful drug use" at the time of the firearms possession. United States v. Daniels, 124 F.4th 967, 970 (5th Cir. 2025) (quoting United States v. Connelly, 117 F.4th 269 (5th Cir. 2024)). Although "history and tradition may support some limits on a presently intoxicated person's right to carry a weapon," they do not support "'disarming a sober citizen based exclusively on his past drug usage.'" Id. at 971, 976. Mr. Franklin alternatively adopts this position in the event that the Supreme Court rules in favor of this approach.

In contrast, the Eighth Circuit has held that § 922(g)(3) is constitutional only as applied to someone whose drug use causes him to "act like someone who is 'both mentally ill and dangerous'" by "induc[ing] terror," or "pos[ing] a credible threat to the physical safety of others" with a firearm. United States v. Cooper, 127 F.4th 1092, 1096 (8th Cir. 2025) (citations omitted). The Eighth Circuit concluded that the historical record supports an individualized, not a categorical, determination: "Nothing in our tradition allows disarmament simply because [an individual] belongs to a category of people, drug users, that Congress has categorically deemed dangerous." Id. Accordingly, the court requires a nexus between the individual's drug use and the conduct resembling that of someone who is dangerously mentally ill: The proper question is whether a citizen's marijuana use "caused him to act 'mentally ill and dangerous,'" i.e., "in an outwardly erratic or aggressive manner . . . reasonably perceived as disturbing or dangerous to others." United States v. Perez, 145 F.4th 800, 807 (8th Cir. 2025). The court does not require such conduct to have occurred contemporaneously with the carry of firearms. Id. at 806. Mr. Franklin alternatively adopts this position in the event that the Supreme Court adopts this approach.

5

As seen in Mr. Franklins argument above, the Sixth Circuit does not require any nexus between a person's membership in a class and his "dangerousness." That is, the government need not show that a person charged with § 922(g)(3) is dangerous because of his drug use. See VanOchten, 150 F.4th at 560-62. Rather, the government can disarm illegal drug users based entirely on unrelated individual characteristics like criminal record. Id.

The Tenth Circuit has offered yet another test. The court relied on historical laws disarming Catholics and Loyalists to discern a principle that legislatures can disarm entire categories of people believed to pose a risk of future danger. United States v. Harrison, 153 F.4th 998, 1021, 1032 (10th Cir. 2025). The court cautioned against deferring to legislative judgments that "a category of people [are] dangerous" as that would "subjugate the right to bear arms." Id. at 1034 (quoting Worth v. Jacobson, 108 F.4th 677, 694 (8th Cir. 2024)). Instead, in determining whether Congress's decision to disarm non-intoxicated marijuana users under § 922(g)(3) is consistent with the Second Amendment, the relevant question is "whether the government [can] justify its assertion that non-intoxicated marijuana users pose a risk of danger." Id.; see id. at 1037 (Kelly, J., concurring in part). Mr. Franklin does not adopt this approach.

The Third Circuit has held that, based on founding-era laws incapacitating drunkards and mentally ill people, § 922(g)(3) can be applied to those "who pose a special danger of misusing firearms because they frequently use drugs." United States v. Harris, 144 F.4th 154, 156, 163-64 (3d Cir. 2025). The Third Circuit's rationale is that the historical record justifies applying § 922(g)(3) to drug users who have not actually harmed anyone in the past; instead, § 922(g)(3) can be applied to a drug user based on the "nature" of his drug use and "the risk that it will impair his ability to handle guns safely." 144 F.4th at 164. Mr. Franklin does not adopt this approach.

6

Most recently, the Seventh Circuit held that § 922(g)(3) is constitutional as applied to an individual whose cognitive abilities are presently and persistently impaired—specifically, a person with a 20-year history of heroin and crack addiction, who was under the influence when the firearms were seized, having used crack just hours earlier while awaiting another delivery from his dealer. United States v. Seiwert, 152 F.4th 858, 866 & n. 4 (7th Cir. 2025). Mr. Franklin does not adopt this approach.

## III.   **CONCLUSION**

Mr. Franklin has demonstrated that Section 922(g)(3) is unconstitutional as applied to him. It violates the Second Amendment and offends due process.

WHEREFORE, for all of the foregoing reasons, Mr. Franklin respectfully requests the Court to dismiss the Indictment. In the alternative he moves this Court to stay the proceedings until the Supreme Court rules on the Hemani issues.

Respectfully submitted,

TYRONE J. PAYLOR
FEDERAL DEFENDER

s/ MARY C. JERMANN-ROBINSON
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(901) 544-3895

### CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing motion has been forwarded by electronic means via the Court's electronic filing system to Mr. Jermal Blanchard, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103, this 25th day of February, 2026.

s/ MARY C. JERMANN-ROBINSON
Assistant Federal Defender