IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                     No. 25-20285 SHL

LATERIAN FRANKLIN,

     Defendant.

MOTION TO SUPPRESS AND MEMORANDNUM OF LAW IN SUPPORT

COMES NOW Defendant, by and through his appointed counsel, moves this Honorable Court to grant this motion and issue an order suppressing all evidence obtained as a result of an unlawful stop, search and seizure.

## I.    **INTRODUCTION**

On October 7, 2025, Laterian Franklin was driving a loaned Chevrolet Malibu vehicle. His personal car was at a body shop for repairs due to an automobile accident. While driving he noted a very low tire and turned into a gas station to assess the damage. He exited the car and determined that the jack in the trunk was not working correctly. He sat back in his car to wait for his brother to arrive with another jack. Suddenly, and without warning, a state trooper and other officers drew weapons and moved quickly towards his vehicle. Mr. Franklin was startled but pulled his identification out and tried to hand it to the first law enforcement officer. The trooper immediately pulled him out of the car. Other officers pulled the other passengers out of the vehicle and immediately began to search it. They did locate a firearm and some marijuana in the car. Some of the marijuana was located in  a backpack. Some was in the purse of another passenger. All the

marijuana was stored in closed Ziplock type bags. Officers questioned Mr. Franklin, and he admitted that he was the legal owner of the firearm and that some of the marijuana belonged to him and was for his own personal use. He now challenges the legality of both the stop and search of his vehicle and moves this Court to suppress the items recovered. Further he moves this Court to suppress his statements as fruit of the poisonous tree.

## II.    ARGUMENTS AND AUTHORITY

### A. The Government Cannot Meet Its Burden to Prove A Valid Traffic Stop and Subsequent Search

Mr. Franklin holds the government to its burden to show they had cause to stop and search his vehicle. The Fourth Amendment protects the "right of people to be secure in their persons . . . against unreasonable seizures." U.S. Const. amend. IV. The Fourth Amendment thus prohibits "'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting Terry v. Ohio, 392 U.S. 1, 9 (1968)). The Sixth Circuit has recognized "three types of permissible encounters between the police and citizens" under the Fourth Amendment: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." United States v. Smith, 594 F.3d 530, 535 (6th Cir. 2010) (internal quotations and citations omitted). Here, the interaction between Mr. Franklin and the officers began as an investigative stop that ripened into an arrest.

When evidence is obtained as a result of an unconstitutional search or seizure, it is inadmissible in federal court. United States v. Pearce, 531 F.3d 374, 381 (6th Cir. 2008) (citing Mapp v. Ohio, 367 U.S. 643, 654 (1961)). This is the exclusionary rule and it "is supplemented

2

by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police dseizure.ly obtain from an unconstitutional search or seizure." Id. (citations omitted).

As explained further below, the Defendant avers that there was no reasonable articulable suspicion to support the Terry stop initiated by State Trooper Michael Austin. The Defendant also avers that even if there was reasonable suspicion to stop his vehicle, the search performed almost immediately following the stop did not comply with constitutional mandates. Consequently, there are no applicable exceptions to the otherwise required search warrant requirement in this case. For these reasons, the Defendant respectfully requests this Court to suppress all of the evidence found as a result of the illegal traffic stop.

When courts evaluate the reasonableness of a Terry stop, they engage in a two-part analysis. United States v. Mays, 643 F.3d 537, 541 (6th Cir. 2011) (citation omitted). First, the court must "ask whether there was a proper basis for the stop." Id. (quoting United States v. Smith, 594 F.3d 530, 536 (6th Cir. 2010)). If the stop was proper, the court must then "determine whether the degree of intrusion . . . was reasonably related in scope to the situation at hand." Id. at 542.

Consistent with the Fourth Amendment, a police officer may effect a traffic stop if the officer "possess[es] either probable cause of a civil infraction or reasonable suspicion of criminal activity." United States v. Lyons, 687 F.3d 754, 763 (6th Cir. 2012) (citing Gaddis ex rel. Gaddis v. Redford Twp., 364 F.3d 763, 771 n.6 (6th Cir. 2004)).

In the instant case, Trooper Austin claimed to have stopped the Defendant because of significant damage to the car, a flat tire, expired temporary tags and dark tinted windows.[1] Neither the damage nor the flat tire provides a valid basis for a legitimate stop. Additionally, the tags were not expired, and the tint was within legal limits.

---

[1] Some video associated with the stop was provided in discovery. None of this showed the initial approach of the trooper. The video provided to the defendant will be made available to the Court.

Consequently, Trooper Austin had no reasonable, articulable suspicion of criminal activity supporting an investigative detention.  Mr. Franklin was targeted simply because he was a black man in a car with a flat tire.  This is not surprising.  The 2024 United States Department of Justice pattern and practice investigation of the Memphis Police Department ("MPD") found that MPD conducts unlawful stops, searches and arrests, and unlawfully discriminates against Black people when enforcing the law.  See Press Release, U.S. Dept. Justice,  Justice Department Finds Civil Rights Violations by Memphis Police Department and City of Memphis (Dec. 4, 2024).   These practices have only gotten worse with the military and other law enforcement additions to the Safe Streets Task Force.

Further, the stop and search were not executed in a reasonable manner. The trooper and several other law enforcement officers suddenly rushed up on the Defendant's vehicle with weapons showing. Not one of the officers present had body worn camera footage of their approach. Mr. Franklin saw the officers running towards him and tried to hand over his valid driver's license. One officer claimed that he saw a gun on the passenger floorboard that caused him concern. One or more of the officers also claim to smell marijuana. Mr. Franklin challenges the veracity of these claims as well as the constitutionality of the search.

Also, Mr. Franklin questions the credibility of Trooper Austin. Trooper Austin did not question Mr. Franklin upon his approach, as stated in his reports. Instead, he immediately and forcibly pulled him out of the car. Other law enforcement officers pulled the other passengers out and immediately began searching the car. One of the videos in discovery shows the officers searching in the trunk of the car while Trooper Austin questioned Mr. Franklin. This video will be provided to the Court in support of Mr. Franklin's claims.

4

Accordingly, the stop of the Defendant's vehicle in this matter was neither reasonable nor was it justified under the Terry standard; therefore, any and all evidence derived as a result of the stop and search of the Defendant's vehicle should be suppressed.

**B. Mr. Franklin's statements following the illegal stop and search should be suppressed.**

In addition to the foregoing, the officers also violated the Defendant's Fifth Amendment rights by subjecting him to custodial questioning without the benefit of Miranda warnings. Under the familiar Miranda rule, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. This had not been done when officers asked the Defendant, after detaining him, about the gun and marijuana found in the car.

Miranda requires that a person taken into custody must be advised of his right to remain silent and his right to counsel prior to any interrogation. Miranda, 384 U.S. at 444. "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). "Functional equivalent" is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id.

Here, there can be no dispute that the Defendant was in custody, and not free to go. He was then asked questions about the contents of the car and the items found therein.

It is settled that the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest. Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (quotations and citation omitted). "If a motorist who has been

detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Id. (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam)).  The Defendant was not given these protections until well after the officers had obtained incriminating information from the Defendant.

In order to deter law enforcement officials from violating the Fourth Amendment by stopping persons without reasonable suspicion or by arresting them without probable cause, the Supreme Court has directed that "all evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court regardless of its source." United States v. Pearce, 531 F.3d 374, 381 (6th Cir. 2008) (quoting Mapp v. Ohio, 367 U.S. 643, 654 (1961)).  The exclusionary rule bars the admissibility of items seized during an unconstitutional search and of testimony concerning knowledge acquired during such a search.  United States v. Baldwin, 114 F. App'x 675, 681 (6th Cir. 2004) (citations omitted).  "This exclusionary rule is supplemented by the fruit of the poisonous tree doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." Pearce, 531 F.3d at 381.

Here, the officers derivatively obtained evidence from unconstitutional questioning.  That is, they had to reasonably know that the questions regarding whether there was anything in the car, and about what was subsequently found in the car, would elicit an incriminating response from the Defendant.  If not interrogation, the question was its functional equivalent, thereby violating the Defendant's Fifth Amendment rights because he had not yet been given Miranda warnings. Because the Defendant's Fifth Amendment rights were violated by such questioning, the evidence found in his vehicle was "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471 (1963).

6

**C.** **Because the first incriminating statements were obtained in violation of Miranda, all subsequent statements were made after Miranda warnings were given, were tainted.**

Mr. Franklin was also questioned after being transported from the scene. This time he was provided with Miranda warnings. He again made the same admissions. The Government's provision of Miranda warnings after unconstitutionally obtaining the incriminating statements earlier cannot be supported by law.

The Supreme Court considered the consequences of providing Miranda warnings after custodial interrogations have begun in Oregon v. Elstad, 470 U.S. 298 (1985), and Missouri v. Seibert, 542 U.S. 600 (2004). In Elstad, officers interrogated the defendant without informing him of his Miranda rights, and the defendant confessed to robbery. 470 U.S. at 300-301. Approximately one hour later, after the defendant had been transported to a police station, officers read him his Miranda rights and interrogated him again. Id. at 227. The court decided that the first statement was inadmissible, but the second was admissible. Id. at 305-07. The Supreme Court established a two-step test in Elstad: whether the first, pre-Miranda statement was coerced, and if so, "whether that coercion has carried over into the second confession." Id. at 310. The Court reasoned that, when a statement is "unwarned but clearly voluntary . . . careful and thorough administration of Miranda warnings serves to cure the condition that rendered the unwarned statement inadmissible." Id. The Supreme Court thus went on to hold that "subsequent administration of Miranda warnings should suffice" to cure the condition. Id. at 313.

Elstad was clarified almost twenty years later in Seibert. The officers in Seibert intentionally refrained from informing the defendant about her Miranda rights, and, after persuading her to confess, read the Miranda warnings, had her sign a waiver of her rights, and resumed questioning immediately. Seibert, 542 U.S. 604-05. Although the Supreme Court concluded that the police action was unconstitutional, the court was divided, with no majority

7

rationale.  A plurality held that a court must use the following five-factor test to determine whether subsequent, post-Miranda-warning statements are admissible:

(1)    The completeness and detail involved in the first round of questioning;

(2)    The overlapping content of the statements made before and after the warning;

(3)    The timing and setting of the interrogation;

(4)    The continuity of police personnel during the interrogations; and

(5)    The degree to which the interrogator's questions treated the second round as continuous with the first.

Id. at 615.  Justice Kennedy concurred only in the result, opining that statements should not be excluded unless the police deliberately violated Miranda.  Id. at 620.

This Circuit has not explicitly adopted either the plurality's test or Justice Kennedy's concurrence.  See United States v. Pacheco-Lopez, 531 F.3d 420, 427 n.11 (2008) (refusing to resolve the issue where the interrogation in issue was inadmissible under both tests but noting that most circuits have treated Justice Kennedy's concurrence as the controlling precedent).  Analyzing the instant case under both tests reveals that the Defendant's subsequent statements were inadmissible despite the later presence of Miranda warnings.

**1.    Defendant's subsequent statements are inadmissible under Seibert's plurality test.**

Starting with Seibert's first factor, the first round of questioning elicited all of the information that was necessary to establish probable cause that the Defendant possessed a firearm and marijuana. As to the second factor, the content of the statements overlapped significantly because the officers already had the unwarned confession that the Defendant possessed the firearm and marijuana.  Regarding the third factor, very little time passed between confessions. As to the fourth factor, the trooper shared the information from the first interview with the other officers

8

prior to the second interrogation.  Finally, analysis of the fifth factor reveals that the second round of questions was continuous with, and merely verified, the first tainted confession.  Thus, all five factors the Supreme Court considered in Seibert would weigh in favor of suppressing the Defendant's subsequent statements.

2. **Defendant's statements are inadmissible under Kennedy's concurrence in Seibert**.

Justice Kennedy's concurrence in Seibert requires two steps.  First, it directs the court to determine whether there was a deliberate violation of Miranda.  Seibert, 542 U.S. at 622.  Second, if there was no deliberate violation, the court applies Elstad and decides whether statements made after a Miranda warning are admissible based on whether they were knowingly and voluntarily made.  Id.  Kennedy was concerned that "An officer may not realize that a suspect is in custody and warnings are required."  Seibert, 5542 U.S. at 620.

In this case, there was a deliberate violation of Miranda.  Trooper Austin deliberately questioned Mr. Franklin after pulling him from the vehicle and detaining him.   He asked him about the gun on the floorboard and the marijuana located in the car. Such practices almost ensure violation of Miranda.  The avoidance of any Miranda warnings at all will violate any suspect's Fifth Amendment rights in all instances where the suspect is stopped and immediately taken into custody after the police allegedly witness a crime.  The fact that Miranda warnings are later given mid-stream, because the police recognize that the suspect is incriminating himself, supports a finding that there is a deliberate avoidance of Miranda inherent in the procedure.  This procedure at the very least makes it more difficult for the courts to enforce federal constitutional protections, and requires a delicate judgment in the instant case.  Illinois v. Perkins, 496 U.S. 292, 303 (1990).

Such procedure should not be condoned because it has the additional negative potential to result in a finding of simple police negligence, rather than deliberate avoidance of Miranda, on

9

every occasion.  That is, the procedure permits the excuse of a traffic stop where the authorities are able to simply claim the encounter remained consensual and that authorities did not realize they had crossed the line into custody with the subject of the interrogation such that Miranda warnings were required.  Further utilization of such a procedure is sufficiently deliberate to require deterrence.

As has been shown under the analysis of the Seibert plurality's test, virtual coercion has carried over into the second confession." Pacheco-Lopez, 531 F.3d at 429  Consequently, a reasonable person in the Defendant's shoes "could [not] have seen the [second round of] questioning as a new and distinct experience," and "the Miranda warnings could [not] have made sense as presenting a genuine choice whether to follow up on an earlier admission." Seibert, 542 U.S. at 615-16.  There was no new circumstance that placed the Defendant in a position where he could make an informed choice about whether to waive his constitutional rights.  Thus, like the plurality found in Seibert, "these circumstances must be seen as challenging the comprehensibility and efficacy of the Miranda warnings to the point that a reasonable person would not have understood them to convey a message that he retained a choice about continuing to talk." Id. at 617.

For all of the foregoing reasons, the Defendant respectfully submits that his subsequent confession should be suppressed.

**D.    <u>The good faith exclusion to the warrant requirement does not apply</u>.**

The Supreme Court has recognized that the exclusionary rule should be used sparingly, only where it "results in appreciable deterrence." United States v. Herring, 555 U.S. 135, 141 (2009) (quoting United States v. Leon, 468 U.S. 897, 909 (1984)).  This is because the principal cost of applying the rule is letting guilty and possibly dangerous defendants go free. Id.  The focus

is, therefore, on the efficacy of the rule in deterring future Fourth Amendment violations, and therefore the benefits of deterrence must outweigh the costs. Id. The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct.  Id. at 143. Hence, to trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. Id. at 144.  The exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.  Id.

For instance, in Herring, the defendant was arrested on a recalled arrest warrant.  The Court concluded that an error in failing to update a computer database to reflect the recall of the arrest warrant was negligent and that negligent error was not enough, by itself, to require the extreme sanction of exclusion under the Fourth Amendment.  The conduct in Herring did not rise to this level because miscommunications were not routine or widespread; and they were not so objectively culpable as to require exclusion.  Id.  Noting that the good-faith inquiry had always been confined to the question of whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances, the Court concluded that the record keeping error in issue was not so objectively culpable as to require exclusion. Id. at 145-46 (citing Leon, 468 U.S. at 922 n.23).  On the other hand, the Court noted that, had the police been shown to be reckless in maintaining the warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified should such misconduct cause a Fourth Amendment violation. Id. at 146.

In this case, the trooper's conduct was deliberate and must be presumed recurrent.  He made the stop because he did not know the law.  Officers are presumed to have a reasonable

11

knowledge of what the law prohibits.  See <u>United States v. Rarick</u>, 636 F. App'x 911, 918 (6th Cir. 2016) (citing <u>Leon</u>, 468 U.S. 897, 919 n.20 (1984)).  This trooper did not.  On the other hand, he must know that he cannot interrogate a suspect in custody without first advising that suspect of his Miranda rights.  Yet, he failed to do so with Mr. Franklin.  For these reasons, Mr. Franklin respectfully requests that the Court suppress all of the evidence resulting from the stop.

## III.   <u>CONCLUSION</u>

When evidence is obtained as a result of an unconstitutional search or seizure, it is inadmissible in federal court. <u>United States v. Pearce</u>, 531 F.3d 374, 381 (6th Cir. 2008) (citing <u>Mapp v. Ohio</u>, 367 U.S. 643, 654 (1961)). This "is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." <u>Id.</u> (citations omitted).

WHEREFORE, for all the foregoing reasons, any and all evidence obtained against Mr. Franklin pursuant to the search of his person, his vehicle, and any statements he may have made should be suppressed.

<div style="margin-left: 40%;">

Respectfully submitted,

TYRONE J. PAYLOR
FEDERAL DEFENDER

s/ MARY C. JERMANN-ROBINSON
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(901) 544-3895

</div>

CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Motion to Suppress and Incorporated Memorandum of Law in Support has been forwarded by electronic means via the Court's electronic filing system to Mr. Jermal Blanchard, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103.


s/ MARY C. JERMANN-ROBINSON
Assistant Federal Defender