**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case: 2:25-20285-SHL** |
| **v.** | ) | |
| | ) | |
| **LATERRIAN FRANKLIN,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America submits the following response in opposition to Defendant's Motion to Suppress, ECF No. 41.

### I.    FACTUAL BACKGROUND

On October 7, 2025, THP Trooper Michael Austin was in the area of South Third Street and West Shelby Drive in Memphis, Tennessee.  Trooper Austin witnessed a Chevrolet Malibu with illegal tinted windows, driving with a visibly flat tire, and an expired temporary drive out tags. Trooper Austin did not initially stop the vehicle as he was headed to another call. Ten minutes later Trooper Austin saw the same vehicle parked at a gas station. He approached the Chevrolet Malibu and the driver, Laterrian Franklin, immediately handed Trooper Austin his driver's license. During the encounter, United States Diplomatic Security Service (DSS) Special Agent approached the passenger side of the vehicle and observed the front passenger with his hand on an AR-style pistol trying to hide it.  The firearm was located on the front passenger-side floorboard.  Due to the threat of the firearm, all occupants were ordered out of the vehicle for officer safety.  Upon exiting, officers detected a strong odor of marijuana coming from  inside the vehicle.

1

A search of the vehicle was conducted due to the smell of marijuana. During the search, an AR-style pistol was located along with two large plastic bags containing a green leafy substance, consistent in texture and odor with marijuana. One of the plastic bags was in plain view behind the front passenger side and the other bag was found in a black backpack. The substance located in the plastic bags later tested positive for marijuana with a total gross weight of 118.1 grams.

During the search, Defendant was handcuffed and placed in the backseat of a THP cruiser. Trooper Austin read Defendant his *Miranda* rights before speaking with Defendant. Defendant acknowledged he understood his rights and wanted to speak with Trooper Austin. This reading and verbal agreement was captured on Trooper Austin's body worn camera. During the interview, Defendant stated the AR-style pistol and marijuana found in the vehicle was his.

Defendant was later interviewed by FBI Special Agents Jordan Miller and Nicole Diminco. This interview was recorded using audio. Defendant was again *Mirandized,* and he stated he understood his rights, and agreed to speak with investigators, and again claimed ownership of the AR-style pistol and marijuana found in the vehicle.

## II.   <u>**ARGUMENT**</u>

The encounter between Trooper Austin and Defendant was consensual and the Trooper's actions during the encounter were lawful. Defendant inaccurately claims that the encounter with Trooper Austin was an invalid stop, that the subsequent search and seizure was illegal, and Defendant was not *Mirandized* before giving a statement in violation of his Fifth amendment rights. The facts reflect the opposite. Trooper Austin engaged in a consensual encounter that lead to a lawful search and seizure, and the Defendant gave a voluntary statement after being *Mirandized*.

### A.  *The encounter was consensual*

The encounter between Trooper Austin and Defendant was consensual and therefore did not require reasonable suspicion or probable cause before approaching.  "For the purposes of the Fourth Amendment, a warrantless consensual encounter with law enforcement officer largely resembles a consensual conversation.  Police officers do not violate an individual's rights under the Fourth Amendment if they 'approach and individual on the street or in another public place . . . ."  *United States v. Taylor*, No. 1:21-cr-759, 2024 U.S. Dist. LEXIS 4747, at *7 (N.D. Ohio Jan. 9, 2024) (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)).  "Warrantless consensual encounters may also occur in places that are not public or 'on the street.'" *Taylor*, 2024 U.S. Dist. LEXIS 4747, at *7; *see United States v. Campbell*, 486 F.3d 949, 952, 956-57 (6th Cir. 2007) (finding that a consensual encounter occurred in a parking lot of a private business where the law enforcement officer began the interaction by asking the motorist if "everything was okay.")  "[T]he police do not need to have probable cause or reasonable suspicion to engage in a consensual encounter."  *Taylor*, 2024 U.S. Dist. LEXIS 4747, at *7; *see Campbell*, 486 F.3d at 954; *see also United States v. Alson*, 375 F.3d 408, 411 (6th Cir. 2004) ("Because a consensual encounter does not amount to a seizure, a police officer does not need reasonable suspicion or probable cause before approaching an individual to make an inquiry.)

Here, Trooper Austin observed Defendant's vehicle traveling on a flat tire.  Approximately 10 minutes after observing the vehicle, Trooper Austin saw the vehicle stopped at a gas station, still with a flat tire.  Trooper Austin's intentions on approaching the vehicle was to provide assistance with the flat tire, not because of any wrongdoing by the Defendant.  "The community caretaking exception acknowledges that law enforcement officers 'wear many hats' and 'interact with citizens in a number of ways beyond the investigation of criminal conduct. . . .'"  *Clemons v.*

3

*Couch*, No. 6:17-CV-63-HAI, 2018 U.S. Dist. LEXIS 248071, at *7 (E.D. Ky. June 7, 2018) (quoting *State v. McCormick*, 494 S.W.3d 673, 681 (Tenn. 2016)); *see generally Cady v. Dombrowski*, 412 U.S. 433 (1973) (recognizing the community caretaking exception). "Law enforcement officers frequently perform essential 'community caretaking functions,' such as 'helping stranded motorists . . . . and assisting and protecting citizens in need.'" *Couch*, 2018 U.S. Dist. LEXIS 248071, at *7 (quoting *Mundy v. Com.*, 342 S.W.3d 878, 883 (Ky. Ct. App. 2011)). Trooper Austin's motives were to assist a citizen, not to investigate criminal conduct. Therefore, the encounter between Defendant and Trooper Austin was consensual and did not violate the Defendant's Fourth Amendment rights because Trooper Austin did not need reasonable suspicion or probable cause to approach.

### B. Officers were Permitted to have the Suspects Step Out of the Vehicle for Officer Safety

The front passenger's hand on the AR-style pistol, in plain view, while trying to actively hide the firearm, was a danger to officer safety. "Once the gun was in plain view, a concern for officer safety also justified the warrantless seizure of the weapon because 'a reasonable officer would have believed, based on specific and articulable facts, that the weapon posed an immediate threat to officer[s]. . . .'" *United States v. Matthews*, 422 F. Supp. 3d 1235, 1253 (W.D. Ky. 2019) (quoting *United States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003); *see also United States v. Lingelbach*, No. 23-30032, 2024 U.S. App. LEXIS 567, at *3 (9th Cir. Jan. 9, 2024) ("[W]ith direct knowledge, rather than mere suspicion, of the presence of a firearm, caused the officer to have a reasonable fear or his safety . . . ." *see also United States v. Robinson*, 846 F.3d 694, 710 (4th App. 2017) ("*Adams v. Williams*, 407 U.S. 143, 146 (1972) does make it clear . . . . that even a lawfully possessed firearm can pose a threat to officer safety." "[T]he officers were in a place where they

were lawfully allowed to be and were able to see the [firearm] plainly from outside the car . . . ." *Matthews*, 422 F. Supp. 3d at 1253. During the consensual encounter between the Defendant and officers, DSS Special Agent stated he observed the front passenger trying to hide a firearm that was in his hand. The firearm was in plain view and clearly visible from outside the vehicle. DSS Special Agent reasonably believed that the presence of the firearm and the suspicious nature of the front passenger trying to hide it posed a threat to officer safety. Therefore, due to officer safety, the officers order to exit the vehicle was proper and did not violate any of the Defendant's constitutional rights because "a reasonable officer would have believed, based on specific and articulable facts, that the weapon posed an immediate threat to officer[s]" *see Matthews*, 422 F. Supp. 3d at 1253; *see Bishop*, 338 F.3d at 628; see also *Lingelbach*, 2024 U.S. App. LEXIS 567, at \*3.

### C. The Warrantless Search on Defendant's Vehicle did not violate the Fourth Amendment

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. Warrantless searches "are per se unreasonable under the Fourth Amendment" except in a few "well-delineated" instances. *United States v. Carson*, No. 22-1180, 2023 U.S. App. LEXIS 9946, \*4-5 (6th Cir. Apr. 24, 2023) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "One of these exceptions is the automobile exception, which permits officers to search an automobile when they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *Carson*, 2023 U.S. App. LEXIS 9946, at \*5 (quoting *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007)). *See also United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012) ("under the automobile exception to the warrant requirement, an officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains

contraband or evidence of criminal activity.")  "Probable cause means reasonable grounds for belief the vehicle contains evidence of a  crime, supported by less than a prima facie proof but more than mere suspicion. *Griesmar v. City of Stow*, No. 5:20-cv-01356, 2022 U.S. Dist. LEXIS 12684, at *12 (N.D. Ohio Jan. 24, 2022) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).  "Put another way, probable cause exists where 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Griesmar*, 2022 U.S. Dist. LEXIS 12684, at *12 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  "The Sixth Circuit has consistently held that a police officer's detection of the smell of marijuana may provide probable cause to search a vehicle after a routine traffic stop." *Griesmar*, 2022 U.S. Dist. LEXIS 12684, at *13.  *See also Lane v. Dolman*, No. 5:23-CV-02138, 2025 U.S. Dist. LEXIS 64167, at *6 (N.D. Ohio Apr. 3, 2025) ("'if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more.' *California v. Carney*, 471 U.S. 386, 391 (1985) . . . it [is] well established in the Sixth Circuit that the smell of marijuana emanating from a vehicle constitutes probable cause to conduct a warrantless search of a vehicle.")  "If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798 (1982), authorizes a search of any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 556 U.S. 332, 347 (2009).

Here, a warrantless search was conducted on Defendant's vehicle.  However, a warrant was not required due to the automobile exception.  When the Defendant and other passengers stepped out of the vehicle, the officers stated they smelt a strong odor of marijuana inside the vehicle.  The smell of marijuana gave the officers "probable cause to believe that instrumentalities or evidence of crime may be found in the vehicle . . . ." *United States v. Boatright*, No. 6:25-CR-10-REW-HAI-1, 2025 U.S. Dist. LEXIS 207918, at *5 (E.D. Ky. Aug. 25, 2025).  The Sixth Circuit has long

recognized that the odor of marijuana inside a vehicle gives officers probable cause to search for contraband wherever it may be in the vehicle. *see Griesmar*, 2022 U.S. Dist. LEXIS 12684, at *13; *see also Dolman*, 2025 U.S. Dist. LEXIS 64167, at *6; *see also Boatright*, 2025 U.S. Dist. LEXIS 207918, at *5.   It should also be noted, due to the encounter being one of community caretaking, it does not have any affect on the recovery of incriminating evidence.  See *Couch*, 2018 U.S. Dist. LEXIS 248071, at *7-8 ("When officers incidentally discover evidence of a crime or observe criminal conduct while conducting a community caretaking exercise, their seizure of the evidence or perpetrator does not run afoul [with] the Fourth Amendment."). Therefore, the search on the vehicle was constitutional and all evidence found should be admissible.

### D.  The Defendant was Properly Mirandized, and his Statements are Admissible

*Miranda* requires that a suspect be advised by investigators of, among other things, his right to remain silent, his right that any statement he makes will be used against him in a court of law, and the right to counsel.  These critical features of *Miranda* ensure that a suspect understands, before being questioned, he is not required to talk to interrogating officers, and he has the right to consult with an attorney regarding any anticipated interrogation.  *See generally Miranda v. Arizona*, 384 U.S. 436 (1966).  *Miranda* warnings are triggered when a defendant is placed in custody, and a custodial interrogation commences.  Here, there is no question that Defendant was placed in custody after the traffic stop.  The Defendant was handcuffed and placed in the back of a troopers squad car.  Once placed in the squad car, Trooper Austin approached the Defendant and read him his *Miranda* warnings.  This *Miranda* rights reading is captured at timestamp 3:03 on Trooper Austins body camera footage.  At timestamp 3:22 the Defendant states he understands his rights and at timestamp 3:27 Defendant agrees to speak with Trooper Austin regarding the

7

investigation. At timestamp 4:10 Defendant claims ownership of the firearm. At timestamp 4:11 Defendant claims ownership of the marijuana in the "clear bag."

Therefore, Defendant was read his *Miranda* warnings before the custodial interrogation took place. Defendant freely and voluntarily waived his rights and agreed to speak with investigators. This was captured on Trooper Austins body camera footage.

In Defendant's motion, he seeks to have the second interrogation suppressed because it was tainted by the first interrogation. This issue is moot because there was a reading of *Miranda* rights in the first interrogation before questions were asked. In the second interrogation, which was recorded and conducted by Special Agent Miller and Special Agent Diminco, Agent Miller read Defendant his *Miranda* rights at timestamp 0:42 until 1:20. At timestamp 01:21 Defendant stated he understood his rights and began answering the agent's questions. At timestamp 02:14, Agent Miller asks Defendant, "what did you have in the car with you?" and Defendant states, "I had my weed and my gun." At timestamp 02:28 Agent Miller asks, "what kind of gun was it?" and Defendant responds, "An AR-15."

### III.   **CONCLUSION**

The encounter between Trooper Austin and Defendant was consensual. Trooper Austin approached the Defendant to provide assistance because he observed the vehicle traveling on a flat tire. During the encounter, the front passenger was observed with his hand on a firearm trying to hide it. Due to the presence of the firearm and the suspicious nature of attempting to hide it, all passengers were ordered to exit the vehicle for officer safety. The strong odor of marijuana gave Trooper Austin probable cause to search the vehicle under the automobile exception. Both custodial interrogations did not violate Defendant's Fifth Amendment rights because proper *Miranda* warnings were given prior to both interrogations. The Defendant freely and voluntarily

waived these rights and agreed to speak with investigators.  For the foregoing reasons, the

Defendant's motion to suppress should be denied.

Respectfully Submitted,

Christopher Wright
Special Assistant United States Attorney

By:    *s/Christopher Wright*
CHRISTOPHER WRIGHT
Special Assistant United States Attorney
167 N. Main Street, Suite 800
Memphis, TN 38103
901-544-4231

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher Wright, Special Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing Notice has been sent via District Court's Electronic Filing System.

This day, March 20, 2026

By:    *s/Christopher Wright*
Christopher Wright